**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DEBRA McEWEN,

        Plaintiff,

v.

TECSTAR, L.P. and
SUN LIFE ASSURANCE CO. OF CANADA,

        Defendants.
_____/

CASE NO. 07-12259
HON. LAWRENCE P. ZATKOFF

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on February 13, 2008

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

### I. INTRODUCTION

This matter comes before the Court on Plaintiff's Motion for Summary Judgment and Defendant Sun Life Assurance Company's Motion for Entry of Judgment [dkt 20, 21]. Because this matter involves the denial of disability benefits governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a)(1)(B) ("ERISA"), the Court construes the parties' Motions as Cross-Motions for Judgment on the Administrative Record. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998) (Gilman, J., concurring). The parties have submitted response briefs, and Sun Life filed a reply brief. The Court finds that the parties have adequately set forth the relevant law and facts such that oral argument would not aid in the disposition of the instant Motions. E.D. Mich. L.R. 7.1(e)(2). Accordingly, the Court ORDERS that the Motions be decided on the briefs submitted. For the reasons set forth below, Plaintiff's Motion is GRANTED, and Sun Life's Motion is DENIED.

## II. BACKGROUND

This action involves disability benefits under an employee-welfare-benefit plan established by Defendant Tecstar and subject to ERISA. The benefits at issue are underwritten and administered by Defendant Sun Life Assurance Company.

Plaintiff worked for over three years as quality manager for Tecstar. In 2004, while working for Tecstar, Plaintiff underwent surgery to remove cancerous tissue from her breast. By May 2005, Plaintiff's radiologist noted that side effects were almost resolved. In 2006, after eight additional surgeries, chemotherapy, and radiation therapy, Plaintiff's cancer was in remission. Yet, the Administrative Record demonstrates that Plaintiff consistently complained of progressive pain and fatigue. Dr. Anne Pawlak, D.O., F.A.C.N., examined Plaintiff on July 28, 2005, and validated Plaintiff's complaints of severe pain, noting a possible relation to post-radiation effects. Although Pawlak's report observes that Plaintiff's pain is constant, it does not indicate that Plaintiff had any difficulty in performing her job nor does it include a recommendation that she cease working. According to Pawlak's notes, Plaintiff informed Pawlak that the pain began sometime in January or February 2005.

In September 2005, Dr. David Simpson, D.O., F.A.C.N., examined Plaintiff. Simpson's report mirrors Pawlak's in that it indicates that Plaintiff suffered pain, progressive in nature, beginning in January or February 2005. Because Plaintiff continued to suffer pain in her neck and chest, she was treated by a pain specialist, Dr. Viji Thomas, on April 14, 2006. Although Thomas's report does not suggest that Plaintiff complained of employment difficulties, it does mention continuous pain in Plaintiff's neck as well as a prior medical history including chronic fatigue and chronic pain.

The Administrative Record contains numerous notes from Plaintiff's oncologist and primary

physician, Dr. Michael McKenzie, D.O. On January 26, 2006, McKenzie observed that Plaintiff had been hospitalized twice in the preceding few months and that "[h]er major complaint continues to be that of fatigability as well as neuropathic pain in the bilateral chest wall and upper extremities." On April 6, 2006, McKenzie examined Plaintiff again. His notes from that examination indicate that Plaintiff "is presently off work due to her increasing fatigue and severe pain." On June 12, 2006, McKenzie determined that Plaintiff was suffering from chronic-pain syndrome and chronic-neuropathic pain in her bilateral armpit area and chest-wall region. Notes from this meeting also demonstrate that Plaintiff was utilizing a Fentanyl patch every four hours and six Percoset pills each day in order to manage her pain. McKenzie's notations from June 12 relate that Plaintiff "has not been able to work . . . due to exacerbation of pain from working and severe fatigue." After observing that Plaintiff's pain and fatigue were increasing, McKenzie opined that, "due to her chronic pain syndrome and fatigue, it is likely that she will not be able to continue work." McKenzie provided Plaintiff with a disability slip to that effect. Plaintiff states in her brief that she presented this slip to Tecstar's Department of Human Resources who informed Plaintiff that she would not be covered for any disability until early 2007 because her breast cancer was a pre-existing condition. McKenzie's notes suggest a different scenario: Tecstar told Plaintiff she was needed until the fall at which time she would be granted full and total disability. Regardless of what transpired between Plaintiff and Tecstar's Department of Human Resources, Tecstar laid off Plaintiff on September 22, 2006.

According to the Administrative Record, after her June 12, 2006, visit with McKenzie, Plaintiff did not visit another physician until September 28, 2006–six days after she had been laid off. During Plaintiff's visit with McKenzie on September 28, Plaintiff declared that although her pain was controllable with medication, she was no longer able to work because of "increased fatigue

3

associated with the pain." As a result of her professed inability to work, Plaintiff intimated to McKenzie that she was planning on applying for long-term disability benefits. According to McKenzie's notes, however, Plaintiff never mentioned that she stopped working because she was laid off. Plaintiff submitted her application for short-term disability benefits in November 2006. Her application included a statement by McKenzie that Plaintiff could never return to work and a statement from Tecstar reporting that Plaintiff had been laid off. Plaintiff's own statement in her application listed work-related stress and side effects from breast-cancer surgeries and treatments as her reasons for employment cessation.

To qualify for short-term disability benefits, a covered employee must submit written notice and proof of her claim that she is totally disabled. Under the policy, "totally disabled" means that an employee, "because of Injury or Sickness, is unable to perform all of the material and substantial duties of [her] own occupation and is not engaged in any occupation for wage or profit." Coverage under the policy ends on "the date employment terminates. Ceasing to be Actively at Work will be deemed termination of employment . . . ." An employee is considered to be "Actively at Work" when she "performs all the regular duties of [her] job for a full work day scheduled by the Employer at the Employer's normal place of business or a site where the Employer's business requires the Employee to travel."

On December 12, 2006, Sun Life denied Plaintiff's claim by letter, explaining that she was not eligible to receive disability benefits under the policy:

> According to the claim forms, your employment was terminated effective September 22, 2006. As our contract states, "an employee will cease to be insured on the earliest of the following dates: the date employment terminates." Due to the Termination Provision in Sun Life's policy with your Employer, you would not be eligible for coverage after September 22, 2006; therefore, your illness of Breast Cancer would not be covered under Sun Life's Policy.

4

The Administrative Record is replete with documentation confirming that Sun Life's denial was based on a finding that Plaintiff was not eligible for benefits. In Sun Life's claim file for Plaintiff, for example, it is noted that Sun Life is "not disputing that the [Plaintiff] has had the condition for a long time and continued to work. However, [Sun Life] cannot consider her to have been TOTALLY disabled if she was working." That same file also indicates that Sun Life was "[u]nable to consider [Plaintiff totally disabled] until 9/23 at which time she was not covered any longer." By letter to Quantum Fuel Systems, which is Tecstar's parent company, Sun Life proclaimed that "we were unable to consider her Totally Disabled until after [September 22, 2006]."

Plaintiff sought reconsideration of this decision on the strength of a January 25, 2007, letter from McKenzie stating that Plaintiff was totally disabled according to him as of June 2006: "I reassessed the patient in September and found that the patient was more fatigued, more depressed and had a deteriorating performance status, and this only reconfirmed my assessment that the patient was permanently and totally disabled." Sun Life affirmed its denial on the basis that Plaintiff was not covered. Moreover, Sun Life indicated that "Since there was no Short Term Disability coverage in force for the time [Plaintiff] was requesting disability benefits (beginning September 23, 2006), we are unable to comment on her level of impairment to determine if disability applies." Plaintiff now brings suit in this Court.

## III. LEGAL STANDARD

In ERISA claims contesting a denial of benefits, "the district court is strictly limited to consideration of the information actually considered by the administrator." *Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 522 (6th Cir. 1998). The Court is required to review the plan administrator's decision based solely on the administrative record and render findings of fact and

conclusions of law accordingly. *Wilkins*, 150 F.3d at 619 (Gilman, J., concurring). In evaluating an administrator's or fiduciary's denial of benefits under an ERISA-governed plan, courts apply a *de novo* standard of review unless the plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). When the plan clearly confers discretion on the administrator to determine eligibility or construe the plan's provisions, federal courts review the administrator's decision under an "arbitrary and capricious" standard. *See Wells v. U.S. Steel & Carnegie Pension Fund, Inc.*, 950 F.2d 1244, 1248 (6th Cir. 1991).

## IV. ANALYSIS

### A. STANDARD OF REVIEW

The Court agrees with the parties that the plan at issue confers discretion on Sun Life. Therefore, Sun Life's denial of benefits shall be reviewed under the arbitrary-and-capricious standard of review. Under the arbitrary-and-capricious standard, the administrator's decision will be upheld "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006) (quoting *Baker v. United Mine Workers*, 929 F.2d 1140, 1144 (6th Cir. 1991)). Although the arbitrary-and-capricious standard is deferential to plan administrators, "it is not a rubber stamp for the administrator's determination." *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 617 (6th Cir. 2006).

ERISA mandates that insurance companies "discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries . . ." 29 U.S.C. § 1104(a)(1); *see also Rochow v. Life Ins. Co.*, 482 F.3d 860, 865 (6th Cir. 2007). Conflicts of interest involving a plan administrator must

6

be considered against this guiding principle when evaluating the actions of the plan administrator. *See Firestone*, 489 U.S. at 115. When a party possesses authority to decide both eligibility and the payment of plan benefits, a natural conflict of interest arises. *Marks v. Newcourt Credit Group*, 342 F.3d 444, 457 (6th Cir. 2003). Conflicts of interest warrant attention when determining whether a plan administrator's decision was arbitrary and capricious. *See, e.g.*, *Firestone*, 489 U.S. at 115; *Whitaker v. Hartford Life & Accident Ins. Co.*, 404 F.3d 947 (6th Cir. 2005); *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 292–93 (6th Cir. 2005). Other jurisdictions utilize different standards of review when conflicts of interest are present. *See Adams v. Thiokol Corp.*, 231 F.3d 837, 842 (11th Cir. 2000). The Sixth Circuit does not employ a different standard but rather considers the conflict as a factor in applying the arbitrary-and-capricious standard.

**B.    SUN LIFE'S DENIAL**

Plaintiff argues that Sun Life's denial of benefits was improper even under the arbitrary-and-capricious standard of review. Plaintiff observes that working full time does not preclude a finding of total disability and, in this case, Plaintiff was totally disabled in June but attempted to work until she was laid off in September. Additionally, Plaintiff maintains that Sun Life operates under a clear conflict of interest that must be considered in determining whether Sun Life's denial of benefits was arbitrary and capricious.

Sun Life argues that Plaintiff does not satisfy the eligibility requirements of the insurance policy because her employment was terminated due to economic downsizing, not because she was totally disabled. In so arguing, Sun Life maintains that Plaintiff failed to produce any evidence that her work performance had been suffering leading up to her termination. Sun Life also contends that no actual conflict of interest exists because no evidence suggests that Sun Life was financially motivated.

Plaintiff must overcome the obstacle that she was laid off rather than physically unable to work. Plaintiff's theory of the case–that she was totally disabled as of June but continued working because she had to–finds root in case law. The Seventh Circuit criticized a welfare plan's argument that the plaintiff could not have been disabled because he worked for seven years without indication of retrogression:

> The plan's bad argument is that because Hawkins worked between 1993 and 2000 despite his fibromyalgia and there is no indication that his condition worsened over this period, he cannot be disabled. This would be correct were there a logical incompatibility between working full time and being disabled from working full time, but there is not. A desperate person might force himself to work despite an illness that everyone agreed was totally disabling. Yet even a desperate person might not be able to maintain the necessary level of effort indefinitely. Hawkins may have forced himself to continue in his job for years despite severe pain and fatigue and finally have found it too much and given it up even though his condition had not worsened. A disabled person should not be punished for heroic efforts to work by being held to have forfeited his entitlement to disability benefits should he stop working.

*Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 918 (7th Cir. 2003) (citations omitted). The Sixth Circuit later quoted *Hawkins* favorably in *Rochow*: "The fact that Rochow remained on the payroll until January 2, 2002 is not determinative as to whether or not he was disabled during that time; there is no 'logical incompatibility between working full time and being disabled from working full time.'" *Rochow*, 482 F.3d at 865. This Court recently found *Hawkins* and *Rochow* persuasive when it ruled in favor of a plaintiff whose condition deteriorated over time to the point that she could no longer perform the job responsibilities required of her and was fired. *Delisle v. Sun Life Assurance Co.*, No. 06-11761, slip op. at 17–19 (E.D. Mich. Oct. 12, 2007).

In both *Rochow* and *Delisle*, the plaintiffs were terminated from employment because of sub-

8

standard job performance. In this way, their firings validated their claims that they suffered total disabilities and were unable to perform "all of the material and substantial duties of [their] own occupation[s]." Here, although the Administrative Record does not directly evidence Plaintiff's deteriorating job performance, it does contain numerous references to Plaintiff's chronic pain and chronic fatigue. Further, various medical documents in the Administrative Record note that Plaintiff had been hospitalized and unable to work for periods of time prior to being laid off. Sun Life takes the position that its decision to deny benefits was due to the fact that the Administrative Record did not support a finding that Plaintiff was totally disabled. The Administrative Record belies this contention on numerous occasions. In the Administrative Record, Sun Life explicitly acknowledges that Plaintiff "has had the condition for a long time and continued to work." Yet, despite such an acknowledgment, Sun Life proclaimed that it could not "consider her to have been TOTALLY disabled if she was working." Elsewhere, the Administrative Record echoes this same sentiment. For instance, Sun Life noted in a letter to Tecstar's parent company that "we were unable to consider her Totally Disabled until after [September 22, 2006]." On these occasions and others like them, Sun Life articulated their belief that it could not consider whether Plaintiff was totally disabled because she was laid off before filing her claim for disability benefits. Put more simply, Sun Life refused to consider the possibility that Plaintiff was totally disabled but nonetheless attempting to work.

The Court has reviewed the entire Administrative Record under the arbitrary-and-capricious standard of review. Having done so, the Court concludes that Defendant's denial was not "the result of a deliberate, principled reasoning process." *Glenn*, 461 F.3d at 666 (quoting *Baker*, 929 F.2d at 1144). Sun Life took the position that it could not possibly make a determination as to whether Plaintiff was totally disabled because she had been laid off prior to filing a claim. This refusal

constitutes an arbitrary-and-capricious denial of disability benefits.

## V.  CONCLUSION

IT IS ORDERED that Plaintiff's Motion is GRANTED, and Sun Life's Motion is DENIED.

IT IS FURTHER ORDERED that this matter is REMANDED to the plan administrator for consideration of whether Plaintiff was totally disabled prior to the termination of her employment.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  February 13, 2008

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on February 13, 2008.

s/Marie E. Verlinde
Case Manager
(810) 984-3290
